[L. A. No. 26237.   In Bank.   May 8, 1961.]

NORA NOVAK, Appellant, v. GLEN HUDSON DEWAR, SR., Respondent.

Cooney & Cooney and Matt D. Cooney for Appellant.

Sheridan, Orr, Barnes, Duval & Benton and Edwin Duval for Respondent.

DOOLING, J.—Plaintiff appeals from an adverse judgment entered upon a jury verdict in her action for damages for personal injuries suffered when she, a pedestrian, was struck by defendant's car in a marked crosswalk. She properly maintains that the evidence establishes negligence as a matter of law on the part of defendant and is insufficient to support a finding of contributory negligence on the part of plaintiff; and the judgment must therefore be reversed.

About 7:45 p. m. on September 1, 1958, plaintiff was attempting to walk across "A" Street at its intersection with Fourth Street in Oxnard. "A" Street runs in a general north-south direction and Fourth Street east-west. Both streets contain four lanes marked for traffic and the intersection was controlled by tri-lite signals. It is conceded that plaintiff was crossing with the green light in her favor.

Plaintiff testified that she was walking westward on the north side of Fourth Street and that she reached the "A" Street intersection, waited for the green light, and then proceeded into the intersection in the marked crosswalk. Before crossing she looked in all directions. She saw a car coming from the north, traveling south on "A" Street, "a block or so" away, and she saw the headlights of defendant's car approaching along Fourth Street from the west, "approximately maybe 250 feet" distant, "not far from the intersection." The only other car that she observed near the intersection was a police car parked on Fourth Street. She kept watching defendant's car as it approached and entered the intersection, and when she was almost halfway across "A" Street, defendant's car from the center of the street seemed to speed up, "suddenly swerved and turned to the left and came right toward" her. She estimated that defendant was traveling "about maybe 25 miles an hour." Plaintiff stated that from a normal walking gait she then "started hurrying," "taking long steps" to "get across as fast as" she could—practically "leaped across"— to avoid the impact but was struck by defendant's car.

Officer Stachey of the Oxnard Police Department, a witness for plaintiff, testified that he was sitting in his police car facing west on Fourth Street some 40 feet east of the "A" Street

intersection, that he observed plaintiff walking toward the intersection and also noted at the intersection a car heading west on Fourth Street waiting for the signal light to change. From his observation, partially obstructed by some trees growing along Fourth Street, he could not tell whether defendant's car was stopped at the intersection or approaching it as the light turned green, but he did note that defendant's car "pulled to the left to go north on 'A' Street," making a "sharp left turn" with "a light to a medium acceleration" of speed and without yielding to westbound traffic. He estimated defendant's speed to be "approximately 15 miles per hour." He stated that plaintiff "entered the crosswalk on the green light," that there was nothing about plaintiff's conduct that would cause him to keep watching her, and that he did not observe the actual collision but within "split seconds" after he saw plaintiff near the center of the street he heard the "dull thud" of the impact and immediately crossed to the scene of the accident.

One Johnson, a witness for defendant, testified that he was driving south on "A" Street toward Fourth, saw the traffic light change to red while he was about four houses from the intersection, and came to a stop at the intersection. After he "was there about 15 seconds or so," he noticed plaintiff step off the curb "to cross in front" of him. He then saw defendant's car turn in front of him, probably going "not more than five miles an hour." He was not certain of the speed but he did not think that defendant would be able to go much "faster than five miles an hour" without "screeching his tires more or less," and he did not hear "the squeal of tires." He thought that the blinker lights on defendant's car were going in signal of a left turn but he was not sure. Johnson did not see the impact but heard the brakes and a scream.

Defendant testified that he was driving east on Fourth Street toward the "A" Street intersection, that he stopped half a block away to discharge some passengers, and then proceeded to the intersection where he stopped in the second lane "closest to the center of the road" for the red traffic light, preparatory to making a left turn. He turned on his "blinker lights for a left turn," and after the traffic light turned green, he "hesitated" a few seconds to see if a car at the opposite side of the intersection heading west on Fourth Street was going to move. He saw that the oncoming car was going to wait and he did not notice anyone in the crosswalk so he proceeded to make his left turn at an "estimated . . . 10 to 15 miles an

752

hour.'' He stated that he first saw plaintiff after he had
''straightened out'' his car and was entering the crosswalk,
that she was then ''to the right'' of his car, ''perhaps a foot
or two,'' ''almost to the point of impact'' and she ''appeared''
to be ''running or hurrying to get across.'' He applied his
power brakes, stopping almost immediately, got out of his
car and went to where plaintiff was lying in the crosswalk.

We can find no substantial distinction between this case
and *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834]. In the
Gray case as in this, the plaintiff was struck in a crosswalk
while crossing with the green light in her favor. In the Gray
case as here, the defendant was making a left turn over the
crosswalk. In the Gray case as in this, the plaintiff kept the
defendant's vehicle under observation while crossing; and in
the Gray case the defendant did not see the plaintiff in the
crosswalk until his ''truck had actually impacted her,'' while
in the case before us defendant did not see the plaintiff until
he was entering the crosswalk and about to strike her.

In *Gray* v. *Brinkerhoff* this court, while recognizing that
negligence and contributory negligence ordinarily present
questions of mixed fact and law ''and may be determined as
a matter of law only if reasonable men following the law can
draw but one conclusion from the evidence presented'' (41
Cal.2d at p. 183), concluded that defendant was guilty of neg-
ligence as a matter of law (*id.*, p. 184) and that plaintiff was
free from contributory negligence (*id.*, pp. 185-186).

[ ██ ] In our case as in Gray (quoting from that case) : ''It
is undisputed that defendant did not yield the right of way
to plaintiff. Such failure constitutes a violation of the statute
and negligence as a matter of law in the absence of reasonable
explanation for defendant's conduct.'' (*Gray* v. *Brinkerhoff*,
*supra*, 41 Cal.2d at p. 184.)

██ Similarly as in Gray, the plaintiff ''had the right to
assume that defendant driver would obey the law, drive in a
reasonable manner, observe her right of way, and yield it.''
(*Gray* v. *Brinkerhoff*, *supra*, 41 Cal.2d at p. 186.) In Gray
when plaintiff ''first realized that the truck was coming on
the crosswalk . . . I tried to hurry to the island in the middle''
(41 Cal.2d at p. 183) ; in our case when plaintiff realized that
defendant's car was turning toward her she started hurrying,
taking long steps to get across as fast as she could. A pedes-
trian using a crosswalk in obedience to the signals placed there
for the government of both pedestrian and vehicular traffic is
entitled to rely upon others' obeying the law until something
occurs which would place him on notice as a person of ordinary

prudence that the law is being or is about to be violated by another to his danger.

Defendant argues certain discrepancies in the testimony of the several witnesses: (a) The speed of his car was estimated at from 5 to 25 miles per hour; (b) plaintiff testified that when the light turned green she looked in all directions and then stepped into the crosswalk, while a witness stated that plaintiff waited for 15 seconds after the light turned green before she started to cross; (c) plaintiff stated that defendant's car was 250 feet down the street when she saw it, while defendant testified that he was stopped at the intersection; and (d) plaintiff placed Johnson's car a block away when the light turned green while Johnson testified that he was four houses from the intersection when the light changed. Nothing in these conflicts, however they may have been resolved by the jury, would justify an inference of plaintiff's contributory negligence.

The position of Johnson's car has no relevancy to plaintiff's conduct in crossing the street. Whatever the speed of defendant's car plaintiff was entitled to act on the assumption that it would not violate her right of way until she actually observed that it was doing so by making a left turn; and whether it was stopped at the intersection or approaching from 250 feet away plaintiff was equally entitled to assume that it would not violate her right of way. Whether plaintiff waited 15 seconds or stepped into the crosswalk immediately is also immaterial on the question of her contributory negligence. In either event she admittedly had the green light in her favor from the time that she left the curb until she was struck by defendant's car.

Since the evidence establishes defendant's negligence as a matter of law and we find no evidence to support a finding of plaintiff's contributory negligence, the judgment for defendant cannot stand.

Judgment reversed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and White, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Herndon in the opinion prepared by him for the District Court of Appeal, *Novak* v. *Dewar* (Cal.App.), 9 Cal.Rptr. 656.

Respondent's petition for a rehearing was denied May 31, 1961. McComb, J., was of the opinion that the petition should be granted.